Good afternoon, gentlemen. Before I have you announce yourselves and start your time running, I want to let you know that Justice Harris is also on this case. He will listen to the tape of the argument, but he is not able to be present with us today. Now, would you each, beginning with the appellant, please stand, let us know your names, All right. You each have 20 minutes. You do not need to take that whole 20 minutes. Mr. Miller, would you like to reserve any of that 20 minutes for rebuttal? I will reserve five minutes. Okay. And would you keep your voices up nice and loud? This microphone, which I do want you to speak into when you're ready to start, records, but it does not amplify. All right. Whenever you're ready, Mr. Miller. May it please the Court. As I said, my name is John Miller. I'm here on behalf of John and Rosiati Miller. In other words, on behalf of myself and my wife. We're grateful to the appellate court for taking its time to hear the two issues today that we've raised on the briefing. We first believe that Judge Lofter should have granted the motion for substitution of judge that was made, presented the second time the case was before her. We And I would start out by saying the fact that we have to borrow it all is a problem. However, if we do, let me just back up a second and say that we have a statutory framework under the TILA, right? That framework says that borrowers have a right to receive certain notices of rescission at the closing. It also says if they're not given those notices, they have a right to inform the bank of their intent to rescind. For up to three years. For up to three years, assuming that certain disclosures were not provided at the closing. Now, if the bank, after that notice of intent is tendered to the bank, the bank is required under the statute to take certain steps to unwind the transaction. If the bank fails to do that, that's the point where we have a cause of action, right? So that's when the clock starts running. 20 days after the notice. 20 days after the notice if the bank fails to respond. And so the question is, what do we have a cause of action for? Because it's very clear, and I don't think there's any dispute, that under 1640E, a damages claim would have a one-year cause of action. But what we're talking about here is the bank's wrongful refusal to do that which is required under 1635B. So their wrongful act is failing to take the certain steps to unwind. So I just think it would be very strange if we have, after one year, one year after the bank fails to take these actions, and the borrower doesn't file a lawsuit, it would be very strange to me if he hadn't had to already file a lawsuit or had a judicial determination of whether the underlying question of whether the bank was justified in failing to take those actions under 1635B. If there was no rule requiring them to do that. I just don't think that makes sense. And that's not the purpose of the TILA. The purpose of the TILA is to provide certainty, predictability, and clarity for borrowers. So if we're left with this question of what statute of limitation applies, I think that's a problem. I think that's contrary to the underlying purpose of the TILA Act. However, I apologize to answer your actual question. If we have to look to something other than the TILA Act, what we should do is we should look to the purpose of the TILA Act and say, what's the purpose? And the purpose is to prevent this wrongful conduct, not taking the steps to unwind timely. And we should use the statute of limitations from the TILA itself, which is one year. That's why our position is that the TILA itself has a perfectly appropriate statute of limitations. If we don't go there, then we're stuck with this position of we don't know what to do because we don't know. We potentially have a patchwork of different states throughout the country with different statutes of limitations that could apply. In Illinois itself, we're going to have to argue about whether, as we were talking about earlier, whether it's the statute of limitations for breach of contract or if it's a regulatory violation with some other statute. And in the Fendon Second Circuit case, they actually didn't quite reach the issue because they said that they were – that the plaintiff was seeking a damages violation. But they suggested that it could also go to the fallback federal statute of four years. The Federal law provides that if there's no statute of limitations included in a Federal law, then the default provision is a four-year statute of limitations, which, by the way, in this case, the third amending counterclaim would not even pass that test. It depends when you run it from. You run it from the 20 days – from 20 days after you didn't respond to the notice, right? Correct. Correct. Let's just look at the timeline, Justice. So the original loan was closed in July of 2007. The foreclosure complaint was filed in August of 2009. So after the foreclosure complaint had been filed, the buyer allegedly sends this letter of rescission, which is still within three years of the original closing, on June 28, 2010. Now, according to my calculations, what I have here is that 20 days, the last day for U.S. Bank to respond to the letter would have been July 20, 2010. So the cause of action would have accrued on the following day, July 21, 2010. Now, the third amending counterclaim wasn't filed until October 27, 2016. So even under the generous Federal statute of limitations of four years, it still fails. Let me ask you a question, then, about the savings clause, 13207, and why that wouldn't apply. Let's say we are going to borrow 1640. It applies. We don't care if you're seeking damages or rescission. They're all mixed up at this point. But why wouldn't 13207 allow them to assert rescission as a counterclaim to your foreclosure? The purpose of 13207, Your Honor, is to allow a claim. It is to prevent plaintiffs who wait for the statute of limitations to expire and then file their claims after that. It allows a defendant who may have had a claim but it was too late to file it beforehand to then be able to save those claims in a – under the savings clause.  So that is a purpose. I don't know if that's the only purpose of 13207, that it doesn't say that in TILA, that, you know, it doesn't say that in 13207. It doesn't say this only applies where it says you could file something as a counterclaim as long as it hadn't, you know, passed the statute of limitations when the complaint was filed. I mean, I agree with you. If that's the purpose, then it doesn't apply here. But it doesn't say that's the purpose. Well, just – the reason it doesn't apply here is because the foreclosure complaint was filed before the TILA claim ever accrued. It didn't even exist at the time the foreclosure was filed. Right. But it hadn't expired either. It didn't exist and it hadn't expired. I mean, it was sort of – Well, it depends on what we're talking about. Because under 1635, the statute of repose, three years from the date of closing, yes, the letter – Yes. The letter allegedly was sent within that three-year period. However, the claim itself was not filed within the one-year period. So if we assume that that is the – because, like I said, the July 21st, 2010, would have been the date of the alleged TILA violation. What happened here is the defendants actually filed a motion to dismiss the foreclosure. That was denied on June 2nd, 2010. But the court, in the case of the Fremont defense, was given the right to file a motion to dismiss the foreclosure in 2011, still within the period under 1640e. And instead of, at that point, seeking 30 days to file their answer and counterclaims in the Fremont defense, they filed a motion to reconsider and go down that route. So by the time the court is done ruling on the motion to reconsider, the one-year period under 1640e has passed. So the borrowers were given a right and given a chance and an opportunity in this case to file – to bring their claims under TILA. They chose not to do so. And so I think where I was going before is, you know, this doesn't make sense. If we're looking at this patchwork, what is the statute of limitations? I mean, it especially doesn't make sense to allow this claim to survive in a case where there's an ongoing foreclosure case that had already been filed and the borrower had an opportunity to bring the action. Now, the defendants brought up the case in the Ninth Circuit, the Hong case, which I believe was Washington, which is a nondjudicial foreclosure state. But even under the facts of that case, I think if that was under Illinois law, the borrower in that case had made the right – exercised the right to rescind before any of the foreclosure claims arose, right? So it was within the statute of repose. They made their – they sent the letter to the bank. The bank didn't send anything. So under Illinois law, I think that they would have a very good case under the facts of the Hong case to bring their claims under – because I think the Savings Clause would apply. Kagan. Under the Savings Clause. Yes. As a defense to the foreclosure. As a defense to the foreclosure. But that's not the facts that we have in this case. This claim was manufactured after the foreclosure case had already been filed. So I'm not sure how I'm doing for time. Well, you don't have to use all your time now. Okay. Not all your time. And you have pretty much used all your time. Okay. So I'll just conclude very quickly. In summary, the defendant's request for a substitution of judge as of right was untimely, and the claims under the TILA were also untimely. So we ask that the trial court's decision on this 2009 foreclosure action be affirmed in its entirety. Thank you. Thank you. Counsel. Good afternoon again, Your Honors. Just to address a couple of matters briefly, then. Counsel just noted that if the borrowers had not moved to reconsider an earlier motion to dismiss, they would have had time to file their counterclaim. However, it needs to be recalled here that Judge Loftus originally did grant the permission to file the counterclaim. She granted permission to file the third amended counterclaim because until the defendant decision came down in the district court, she was not convinced that there was a one-year statute of limitations to TILA. So that time respite doesn't seem to have – would not have made any difference here at that time. This was sort of a springing statute of limitations. A new case comes down and suddenly your claim is gone. Usually, one knows what the statute of limitations is going into litigation. After all, it's a statute. It's not usually that big a controversy. Here, the statute of limitations changed mid-case. Returning for a moment about what constitutes a dismissal for want of prosecution, in my experience, usually if somebody objects, then the motion is do not. If there's a live person on the other side or a live case, it isn't going to be dismissed for want of prosecution. But I think there is a difference between motions for dismissal for want of prosecution and other forms of motion to dismiss that go to the substance of whether you state a cause of action. And that's that a motion for dismissal for want of prosecution is not a final judgment. And you can refile thereafter, which I think is indication that it's not considered to be on the merits. And if it's not on the merits, then it's not substantial. Back to the statute of limitations for Teeler claims. 1640 is pretty explicit that it is talking about damage claims, that the statute of limitations in 1635E does not cover section 1635. 1635 itself is even more explicit. However, I would like to refer to section 1635G, which states in any action in which it is determined that a creditor has violated the section. That's section 1635. In addition to rescission, the court may order relief under 1640 of this title for violations of this subchapter not relating to the right to rescind. So the statute is making a clear distinction between relief under 1640 and relief relating to the right to rescind as separate concepts. And you do not have, therefore, the one-year statute of limitations for 1640 applying to a rescission brought under 1635. The motion for substitution of judge was brought before Judge Loftus the first time that that motion was able to be brought. Judge Loftus was new to the case. And in fact, nobody knew that the judges had been changed. Sometimes they change pretty quickly up on the 28th floor. So it was brought at the first opportunity. It was brought to the second hearing before Judge Loftus once everybody knew she was there. There was nothing here trying to be deceptive. As I said, one gains no testing of the waters in this fashion by technicalities. And Judge Loftus actually originally denied the counterclaim. Counselor and I naturally disagree on the reach of Jesenowski. We think Jesenowski stands for the proposition that a borrower doesn't have to file suit to have an effective rescission. And it's effective on notice. You don't have to sue. The gentleman said that filing the third amended counterclaim would have been beyond the statute of limitations even with the federal save-all clause. And actually the case he was referring to here was the federal Seventh Circuit decision in Fenton. Fenton was the case down below that Judge Loftus had relied on the district court opinion to reach the conclusion that the one-year statute of limitations applied. Instead, as the gentleman noted, the court thought that the federal catch-all would apply perhaps or a state statute of limitations could be borrowed. That was the suggestion of the Seventh Circuit. Counsel, your time is up. So can you summarize? Sure. Well, the third amended counterclaim was filed in 2016. That was the third amended counterclaim. If you filed the first counterclaim for the rescission, it would have been tied to the federal catch-all. We thank you for your honors, time, and patience. Thank you. Thank you both. We will take this matter under advisement and you will hear from us shortly. This Court is going to be in recess for just a very couple of minutes. We'll be back for the next.